IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MID-CONTINENT CASUALTY COMPANY,  )
           )
        Plaintiff,    )
           )
    v.         )      Case No. 17-2561-JWL
           )
GREATER MIDWEST BUILDERS, LTD and  )
GREATER MISSOURI BUILDERS, INC.,  )
           )
        Defendants.   )
           )
_____)

## MEMORANDUM AND ORDER

This matter comes before the Court on defendants' motion to dismiss (Doc. # 11). The Court agrees with defendants that plaintiff has not stated a plausible claim for breach of contract. Accordingly, as more fully set forth below, the motion is **granted**, and this action is hereby dismissed.[1]

### I.    Background

This case arises from liability insurance policies issued by plaintiff Mid-Continent Casualty Company ("MCC") to defendant Greater Midwest Builders, LTD ("GMB"). MCC alleges that GMB has breached those contracts by failing to pay MCC deductible amounts relating to MCC's payment of proceeds under the policies to claimants injured

---

[1]Because the parties' briefs are sufficient for resolution of the motion, the Court denies plaintiff's motion for oral argument (Doc. # 23).

by GMB.

GMB built a number of townhomes in Kansas. The homeowners association ("HOA") and various owners of the townhomes sued GMB in Kansas state court to recover for water damage to the property. MCC and another insurer defended GMB in that litigation under reservations of rights. MCC then filed a declaratory judgment action in this Court, seeking a declaration of no coverage, but that action was stayed pending resolution of the Kansas case. GMB terminated the defense provided by the insurers, and it settled the claims against it; under the terms of that settlement agreement, GMB would not contest the claimants' claims at trial, and the plaintiffs could collect a judgment only from GMB's insurers. The Kansas state court subsequently issued a judgment in the claimants' favor against GMB in an amount in excess of $7,000,000.

The Kansas claimants then filed a statutory garnishment action against MCC in Missouri state court. In light of that filing, this Court dismissed MCC's declaratory judgment action; the Court reasoned that any issue concerning the applicability of certain policy exclusions would necessarily be decided in the Missouri garnishment action. *See Mid-Continent Cas. Co. v. Greater Midwest Builders, LTD*, 2011 WL 5507329 (D. Kan. Nov. 17, 2011), *aff'd sub nom. Mid-Continent Cas. Co. v. The Village at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977 (10th Cir. 2012). After a bench trial, the Missouri state court issued a judgment in favor of the HOA on its garnishment claim against MCC (claims by the individual owners had been settled). The Missouri Court of Appeals then affirmed that judgment, although it modified the amount of the judgment

2

against MCC to $4,039,819.74 (plus post-judgment interest from the date of the Kansas judgment). *See The Village at Deer Creek Homeowners Ass'n, Inc. v. Mid-Continent Cas. Co.*, 432 S.W.3d 231 (Mo. Ct. App. 2014).[2]

MCC alleges that it settled that liability to the HOA, paying an amount in excess of $5,000,000. In this suit, MCC claims that application of the policies' $1000-per-occurrence deductibles would have offset the amount it paid in settlement, and it now asserts a claim against GMB for breach of contract to recover such deductibles. MCC also asserts a claim based on alter ego liability against GMB's parent company, defendant Greater Missouri Builders, Inc. ("Greater Missouri").

## II.    Personal Jurisdiction

The Court first addresses defendants' argument that the Court may not exercise personal jurisdiction over them. In *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159 (10th Cir. 2011), the Tenth Circuit reaffirmed the following standards governing this Court's analysis of the issue of personal jurisdiction over a defendant:

> Where a federal lawsuit is based on diversity of citizenship, the court's jurisdiction over a nonresident defendant is determined by the law of the forum state. The party seeking to establish personal jurisdiction over a foreign defendant must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment. Kansas's long-arm statute is construed liberally so as to

---

[2]GMB's other insurer was also a defendant in the garnishment action, but it settled its liability to the Kansas claimants during the Missouri appeal.

allow jurisdiction to the full extent permitted by due process principles. Consequently, this court need not conduct a statutory analysis apart from the due process analysis.

The due process analysis is also two-fold:  First, [the defendant] must have "minimum contacts" with the forum state, demonstrating that he purposefully availed himself of the protections or benefits of the state's laws and should reasonably anticipate being haled into court there. . . .

If [the defendant] is found to have the requisite minimum contacts with Kansas, then we proceed to the second step in the due process analysis:  ensuring that the exercise of jurisdiction over him does not offend traditional notions of fair play and substantial justice.  [The defendant] bears the burden at this stage to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

*See id.* at 1166-67 (citations and internal quotations omitted).

Defendants first argue that MCC cannot establish the requisite minimum contacts with Kansas to permit jurisdiction over defendant Greater Missouri.  In their initial brief, however, defendants failed to address specifically the alter-ego basis for liability asserted by MCC.  This Court has consistently ruled that if personal jurisdiction exists with respect to the primary defendant, alter ego allegations may support the exercise of jurisdiction over another defendant.  *See, e.g.*, *In re Syngenta  AG MIR 162 Corn Litig.*, 2016 WL 1047996, at *3 (D. Kan. Mar. 11, 2016) (Lungstrum, J.).  In their reply brief, defendants do not dispute that alter ego allegations could provide the basis for jurisdiction over Greater Missouri, but they argue that MCC's alter ego allegations in this case are deficient.  The Court disagrees, as MCC has alleged that GMB was not created for legitimate business purposes; that the two defendants share directors and

4

officers; that Greater Missouri finances GMB; that GMB has inadequate capital; that Greater Missouri's employees conduct GMB's business; that GMB does not operate independently; that Greater Missouri performed the work on the Kansas project at issue here; and that Greater Missouri dominates the control of GMB. Those allegations have not been controverted by evidence from defendants, and thus they must be taken as true for purposes of determining the Court's jurisdiction. *See Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000). Those allegations, which are not merely conclusory but which include factual assertions, support a plausible claim for alter ego liability. *See Real Estate Investors Four, Inc. v. American Design Group Inc.*, 46 S.W.3d 51, 56 (Mo. Ct. App. 2001) (setting out elements of alter ego claim).[3]

It is not clear whether defendants argue that GMB also lacks the requisite minimum contacts with Kansas. In the introduction and in the relevant sub-heading for this section of their brief, defendants stated that minimum contacts are lacking for Greater Missouri specifically. Defendants did argue in one paragraph of that brief, however, that the claim against GMB does not arise out of that defendant's contacts with Kansas. Thus, the Court will address the issue of GMB's minimum contacts as well.

Defendants argue that MCC's claim arises solely out of the insurance agreements and thus does not arise out of any activity in Kansas, although it does not cite any supporting authority. In response, MCC relies on *Employers Mutual Casualty Co. v.*

---

[3]Defendants cited this case in arguing that MCC's allegations were insufficient for alter ego liability under Missouri law.

*Bartile Roofs, Inc.*, 618 F.3d 1153 (10th Cir. 2010), in which the Tenth Circuit rejected a similar jurisdictional challenge.  That case, filed in district court in Wyoming, involved a claim by an Iowa insurer against its insured, a Utah construction company, concerning its obligations under the insurance policy with respect to litigation in California arising from a Wyoming construction project. *See id.* at 1157-58.  The Tenth Circuit ruled that the case arose out of the insured's construction activity in the forum state, which activity was therefore sufficient to support specific jurisdiction over the insured. *See id.* at 1160-61.

In their reply brief, defendants did not address this issue of the sufficiency of GMB's contacts, and thus defendants have not explained why *Bartile Roofs* would not control here.   As in that case, MCC's claim here arose ultimately from GMB's construction activity in Kansas.  Thus, the Court rejects any argument that GMB's contacts with Kansas are insufficient.

Defendants also argue that the exercise of jurisdiction over them in this case would offend traditional notions of fair play and substantial justice (the second step in the due process analysis).  Defendants have not met their burden, however, to present a compelling case that jurisdiction here would be unreasonable.[4]  In particular, defendants (with counsel located in Kansas City, Missouri) have not explained why it would be at all burdensome to litigate this case in this Court, located in the Kansas City metropolitan

---

[4]Defendants did not address this issue concerning the second step in their reply brief.

area.  *See id.* at 1161-64 (Tenth Circuit rejecting a similar argument where burden of litigating in adjacent state was light).  Accordingly, the Court denies defendants' request for dismissal for lack of personal jurisdiction.

Defendants also argue that venue is lacking here.  Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," *see* 28 U.S.C. § 1391(b)(1), and for this purpose, a defendant is deemed to reside in any district in which it is subject to the court's personal jurisdiction with respect to that action, *see id.* § 1391(c)(2).  Defendants argue that Section 1391(b)(1) is not satisfied because jurisdiction over one defendant, Greater Missouri, is lacking.  The Court has rejected that jurisdictional challenge; thus, venue is proper under this provision.  Moreover, as MCC points out, venue would also be proper under Section 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Kansas.  *See id.* § 1391(b)(2); *Bartile Roofs*, 618 F.3d at 1164-66 (venue was proper under Section 1391(b)(2) in coverage claim that arose from construction in the district).[3]  Therefore, the Court rejects the request for dismissal for lack of venue.

### III.    Res Judicata and Collateral Estoppel

Defendants argue that MCC's present claim is barred by res judicata because MCC's liability under the insurance policies was already determined in the Missouri

---

[3]Defendants did not address the issue of venue in their reply brief.

garnishment action.  The Court rejects this basis for dismissal, as defendants have not shown that the requirements for that defense are met here.  *See* Fed. R. Civ. P. 8(c) (listing res judicata as an affirmative defense).  Specifically, defendants have not established the requisite identities between this action and the Missouri garnishment action with respect to the thing sued for, the cause of action, the parties to the action, and the quality of the person against whom the claim is made.  *See Gu v. Hu*, 447 S.W.3d 680, 689 (Mo. Ct. App. 2014) (listing the four required identities).[4]  For instance, the fourth identity is not satisfied here because MCC contested the scope of its liability on the policies as a defendant to the HOA's garnishment action, but it asserts its claim here as plaintiff against its insured as defendant.  *See id.* at 692 (identity exists where defendants are sued in the same capacity in both suits).

Defendants also argue that MCC's claim is barred by collateral estoppel because the issue of the applicability of deductibles was already decided in the garnishment action against MCC.  This is a much closer question, which the Court ultimately declines to answer.

In addressing this issue, the Court first disposes of MCC's argument that it could not have raised the deductibles as a defense in the garnishment action.  The insurance policies limit MCC's liability to amounts in excess of the applicable deductibles, and

---

[4]The Court applies the law of the state from which the allegedly preclusive judgment came.  *See Raab Sales, Inc. v. Domino Amjet, Inc.*, 530 F. Supp. 2d 1192, 1196 (D. Kan. 2008) (Lungstrum, J.).

thus that issue would have been relevant in any garnishment action. MCC's reliance on *Western Heritage Insurance Co. v. Love* , 24 F. Supp. 3d 866 (W.D. Mo. 2014), *aff'd sub nom. Western Heritage Ins. Co. v. Asphalt Wizards*, 795 F.3d 832 (8th Cir. 2015)—the only authority cited by MCC—is misplaced. In *Western Heritage*, the district court and the Eighth Circuit ruled under Missouri law that a deductible endorsement defense is not a coverage defense or exclusion that is waived when an insurer defends without reserving rights. *See id.* at 879; 795 F.3d at 837. Those courts did *not* rule that a deductible could never be raised as a defense to coverage, in a garnishment action or otherwise. Both courts noted that such a waiver does not rewrite the policy to remove the maximum coverage provided, and the Eighth Circuit specifically likened deductible to policy limits, which are not waived by a failure to reserve rights. *See* 24 F. Supp. 3d at 879; 795 F.3d at 837. These rulings have no application to the present case, as MCC did not waive any defenses by failing to reserve rights. Certainly, in the garnishment action MCC could have asserted policy limits as applicable as a defense to a claim for an amount in excess of those limits; similarly, because MCC was required under the policies to pay only those amounts in excess of the deductibles, MCC was free to assert the deductibles to limit the HOA's recovery in the garnishment action.

MCC also argues that collateral estoppel does not apply here because it did not actually litigate the applicability of the deductibles in the garnishment action. *See Gu*, 447 S.W.3d at 686-87 (where trial court rejected a defense first raised at trial as untimely, defense was not actually litigated, and collateral estoppel therefore did not

9

apply).  The only information before the Court on that question is that MCC asserted the deductibles as an affirmative defense in its answer in the garnishment action; and that, as agreed by the parties, MCC did not present evidence on or raise the issue of the deductibles at the garnishment trial.[5]  There is no question that the Missouri garnishment court rejected the defense—the court expressly ruled that it had considered each affirmative defense to coverage raised in MCC's answer, and that MCC had failed to meet its burden to prove any policy exclusion or limitation raised in the answer, including because MCC failed to put on evidence on many of those defenses.  MCC nevertheless argues that, for purposes of collateral estoppel, it did not actually litigate the issue of the deductibles because it failed to pursue the issue at trial.[6]

---

[5]The Court rejects MCC's argument that the Court should not consider the answer and findings from the garnishment action, which defendants provided, in ruling on the motion to dismiss without conversion to a motion for summary judgment.  The Court may take judicial notice of such public records without effecting such a conversion.  *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004).  MCC's suggestion that matters should only be judicially noticed in ruling on a motion to dismiss if they relate to the plaintiff's affirmative claim and not to a defense is wholly unsupported.  There is no reason for the Court not to accept the undisputed facts that MCC asserted this deductibles defense in its answer in the garnishment action and that the Missouri court rejected that defense for failure of proof.

[6]In its brief, MCC suggests that it asserted the affirmative defense in answer to claims by GMB in that action (which claims were never resolved on the merits), and not necessarily in answer to the garnishment claim, for the reason that the defense did not apply to the garnishment claim.  As noted above, however, the defense did apply to the garnishment claim, and MCC would have had every incentive to assert it in response to that claim.  Moreover, the affirmative defense is listed in the answer under the heading "Affirmative Defenses Common to All Counts."  Thus, MCC is deemed to have asserted the defense in its answer with respect to the garnishment claim.

The parties did not cite any legal authority on this issue of whether MCC's mere assertion of the defense in its answer constitutes "actual litigation" of the defense for purposes of collateral estoppel. The comments to the Restatement (which the Missouri Court of Appeals cited with approval in *Gu*) provide that an issue is actually litigated when it is "properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined;" and that an issue is not actually litigated if it could have been asserted as an affirmative defense but was not so asserted. *See* Restatement (Second) of Judgments § 27 cmts. d, e. A leading treatise seems to favor the rule that "preclusion applies to any issue framed by the pleadings and not withdrawn, even though it has not been raised at trial in any way." *See* 18 Chas. A. Wright, et al., *Federal Practice and Procedure: Juris. 2d* § 4419 (footnote omitted). Such a rule is supported by the rationale that, once a defense is raised (and not withdrawn), the opposing party has the right to rely on the expectation that the issue will be resolved in that action. *See id.*

In this case, there is no information from which the Court may determine as a matter of law whether MCC ever affirmatively withdrew its deductibles defense before the garnishment trial. If MCC did not withdraw the defense before trial, then under the rule espoused in the above-quoted treatise, the issue would be deemed to have been actually litigated. Defendants bear the burden of establishing this affirmative defense of collateral estoppel, however, and they have provided no information concerning the pretrial conduct of the litigation, including whether any discovery was taken concerning

11

the defense asserted in the answer.  *See* Restatement (Second) of Judgments § 27 cmt. f (extrinsic evidence may be relevant concerning whether an issue was actually litigated). Thus it appears that there may remain a question of fact concerning whether MCC actually litigated the defense of the deductibles in the garnishment action, which would mean that the issue of collateral estoppel could not be resolved at this stage.  The Court need not decide whether such a question of fact remains, however, in light of its ruling below that the case should be dismissed because MCC has failed to state a plausible claim for relief.[7]

### IV.  Failure to State a Claim for Breach of Contract

Defendants also seek dismissal of MCC's complaint for failure to state a claim.[8]

───────────────────

[7]The Court rejects defendants' related argument that it was relieved of any obligation under the policies (including any obligation to pay deductible amounts) when MCC failed to defend without a reservation of rights.  The cases cited by defendants do not go beyond the loss of the right to enforce contractual provisions relating to cooperation and the right to control the defense of the insured, and the Missouri garnishment court cited those cases only in rejecting arguments asserting a lack of cooperation or attacking the reasonableness of the underlying judgment against the insured.  There is no basis to relieve defendants of any obligations under the policies concerning the amount of coverage.

[8]Defendants purport to make their merits-based argument in the context of a motion for judgment on the pleadings, although they argue that MCC has failed to state a plausible claim under the usual motion-to-dismiss standards.  The rules allow for a motion for judgment on the pleadings after the pleadings have been closed.  *See* Fed. R. Civ. P. 12(c).  In this case, however, defendants have not yet filed an answer.  Thus, defendants' argument is more appropriately considered in the context of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

The Court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic*, 550 U.S. at 555. The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555. The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In its complaint, MCC asserts a cause of action only for breach of the insurance policies' deductible endorsements, which provided that MCC's obligation as insurer applied "only to the amount of damages in excess of any deductible amounts." In the complaint, MCC alleges that defendants' obligation to pay MCC the deductible amounts arises from the following settlement provision in those endorsements:

> We [the insurer] may pay any part or all of the deductible amount to effect

13

> settlement of any claim or "suit" and, upon notification of the action taken, you [the insured] shall promptly reimburse us for such part of the deductible amount as has been paid by us.

The policies define "suit" as follows:

> "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  "Suit" includes:
>
> a.    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
>
> b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Defendants argue as a matter of law that this settlement provision does not apply to the present situation in which MCC settled the garnishment action against it by the HOA.[9] Defendants argue that that provision applies instead to a situation in which the insurer has settled a claim against the insured, thereby benefitting the insured, which settlement payment did not include an offset for the applicable deductible—for instance when the insurer has paid to effect repairs needed because of property damage, or when the insurer has controlled the defense of a claim by the injured party and has negotiated and paid a

---

[9]Defendants also seem to dispute whether there was an actual settlement between MCC and the HOA, in light of the fact that the HOA received a judgment against MCC, MCC exhausted its appeals of that judgment, and MCC eventually filed with the Missouri court a satisfaction of that judgment.  MCC has alleged a settlement, however, and the parties have not presented evidence or provided details of the settlement.  Thus, at this stage, the Court does not dispute the existence of a settlement between MCC and the HOA.

14

settlement to that party.  In such cases, this provision would allow the insurer to effect the necessary offset by obtaining reimbursement of the deductible amount from the insured.

MCC responds by arguing that the settlement provision does not require that the settlement have benefitted the insured.  The Court agrees with defendants, however, that the only reasonable interpretation is that the provision applies and the reimbursement obligation arises only in the context of a settlement by the insurer of a claim or suit against the insured.  *See Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. 1998) (provisions of an insurance policy must be read in the context of the policy as a whole).[10]  The endorsements obligates the insurer to pay (covered) amounts paid by the insured, less the deductible amounts.  The only occasion in which an insured would need to reimburse the insurer for deductibles would be when the insurer paid a claimant to settle a liability owed by the insured.  In this case, the HOA (the claimant) had already secured a judgment against GMB (the insured), but GMB had already satisfied its portion of any judgment by its settlement with the HOA.  Thus, when MCC settled with the HOA, it was not paying that judgment against GMB or settling any liability of GMB, but rather it was settling its own liability on the HOA's garnishment claim.  *See Sauvain v. Acceptance Indem. Ins. Co.*, 500 S.W.3d 893, 899 (Mo. Ct. App. 2016) (equitable garnishment action under Missouri statute is not technically a garnishment, but is

---

[10]Each side cites Missouri cases concerning the interpretation of the insurance policies, and thus they appear to agree that Missouri law governs this issue.

15

actually a direct cause of action against the insurer on the policy). Payment or settlement of the insurer's own obligation to a claimant in a garnishment action would include only those amounts due under the policy, and thus would not include deductible amounts that the insurer is not obligated to pay. Thus, there would be no reason for the policy to provide for reimbursement from the insured in such an instance. Indeed, the policies contain no provision allowing for reimbursement of deductibles in the event that the insurer satisfies a garnishment judgment without a settlement, and there is no reason the policies would distinguish between the situation in which the insurer settles a judgment to a claimant and the situation in which the insurer simply pays that judgment.

The other terms of the policies support this limiting interpretation of the settlement provision. The policies are intended to provide insurance for liabilities incurred by the insured. The policies obligate the insurer to defend any covered "suit" against the insured, which naturally involves the insured's liability to a claimant. The settlement provision applies to settlement of a claim or "suit", and "suit" is defined as a proceeding involving certain types of damages (bodily injury, property damages, personal and advertising injury) covered by the policies that the insured has caused. Examples given in the definition include arbitrations and other dispute resolution proceedings to which the insured submits. The policies cover damages caused by the insured, and the deductible endorsements' settlement provisions must be interpreted in that context, applying when the insurer settles a claim for damages caused by the insured. MCC did not settle a claim against GMB; therefore, the settlement provisions

16

do not apply here, and MCC has not stated a plausible claim for breach of that provision by GMB.[11]

MCC also appears to argue that it relies on the settlement provision as an alternative basis for liability, and that defendants simply owe the deductible amounts because those amounts are not covered under the policies. MCC has not identified any other term of the policies that defendants allegedly breached, however. For instance, as defendants note, the policies do not state that the insured must reimburse the insurer if the insurer has paid on a garnishment claim without an offset for applicable deductibles. MCC has not alleged any other basis for liability other than a claim for breach of contract, and as ruled above, MCC has not stated a plausible claim for breach of any particular provision of the policies. Accordingly, the Court dismisses the action against GMB. Moreover, because any liability of Greater Missouri is derivative of GMB's liability (as alter ego), the claim against Greater Missouri also fails, and the Court dismisses this action in its entirety.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion

---

[11]MCC cites *Zurich American Insurance Co. v. NewMech Companies, Inc.*, 2014 WL 241760 (D. Minn. Jan. 22, 2014), as a case in which a claim for reimbursement of a deductible was permitted under a settlement provision in the policy. In that case, however, the insurer paid directly for damages suffered by the claimant, and the issue was whether such payments were voluntary for purposes of the voluntary payment doctrine under Minnesota law. *See id.* The case is not helpful to the issue of whether the settlement provision applies also to the settlement of the insurer's own liability in a garnishment action by the claimant.

to dismiss (Doc. # 11) is hereby **granted**, and this action is hereby dismissed.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff's motion for oral argument (Doc. # 23) is hereby **denied**.

IT IS SO ORDERED.

Dated this 12th day of February, 2018, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

18